## J. W. DUNCAN V. E. J. BICKFORD ET AL.

### No. 3320.

**Community Property.**—The intestate married in 1848. In June, 1854, the wife died leaving daughter of the marriage. In 1849 deed to a league and a half of land was executed to the husband. The title, however, was void because the land was situated within the ten littoral leagues. In 1855 the husband married again and children were born of the marriage. In 1853 certificates were located upon the land and the locator brought suit at once against the husband. The land was patented under these locations in 1863, and in 1875 by compromise a judgment for 250 acres was entered for the defendant, including his residence, which had been occupied by himself and his family ever since his second marriage and until his death in 1880. The daughter of the first marriage sold her interest and the purchaser sued therefor, claiming that the land was the separate property of the husband, or of the community of the first marriage. *Held,* that the concession by the owner of the land to the husband during the second marriage raised the presumption that the land was community of the second marriage.

APPEAL from Refugio. Tried below before Hon. H. CLAY PLEAS-ANTS.

The opinion states the case.

*Glass, Callender & Proctor,* for appellant.—1. The presumption of the law that property purchased during marriage is community property of that marriage can be overcome only by clear and cogent evidence, not by vague presumption. Love v. Robertson, 7 Texas, 6; Huston v. Curl, 8 Texas, 242; Mitchell v. Marr, 26 Texas, 329, 331; Chapman v. Allen, 15 Texas, 278; Epperson v. Jones, 65 Texas, 427; Smith v. Bailey, 66 Texas, 553; Finn v. Williamson, 75 Texas, 337; McDougal v. Bradford, 80 Texas, 558.

2. It is of no importance whether Bickford's title to the league and a half covered by the deed he received from Jones, the administrator

of Grant, was valid or invalid. It was such a title that Brichta's heirs were willing to convey, and did convey their title to 250 acres of the same land in consideration that Bickford would surrender the remainder; and thus by the surrender of his title, such as it was, to the remainder of the league and a half, he purchased a good title to the 250 acres he retained; and if the title he surrendered was community property of himself and first wife, the 250 acres necessarily belong to the same community estate.

3. The evidence offered and excluded as to when Bickford first occupied and improved the place could not be material to any issue in the case. If the Davis title was void the land belonged to the State, and was not subject to adverse possession by any one until after it was appropriated by Brichta's locations. Brichta made his locations in 1850, and sued Bickford in 1853. Bickford's first wife did not die till 1854, and he married his second wife in 1855, while the suit was pending. Neither Bickford alone nor Bickford and either of his wives ever acquired any right to the land by adverse possession.

*Fly & Hill,* for appellees.—Under a void deed or grant no rights can be acquired; neither can it be ratified so as to give a right thereunder. Cummings v. Powell, 8 Texas, 80; Fowler v. Stoneum, 11 Texas, 478; Brown v. Christie, 27 Texas, 76; Moody Heirs v. Moeller, 72 Texas, 635.

HENRY, ASSOCIATE JUSTICE.—The appellant brought this suit to try title and recover eight-fourteenths of a tract of land containing 250 acres, and for partition. The cause was tried by the court without a jury upon an agreed statement of facts, and judgment was rendered for the plaintiff for one-eighth interest in the land. The following is the substance of the agreed statement:

Peletiah Bickford was married to Sarah Lewis on the 21st day of December, 1848. The said Sarah Lewis Bickford died intestate in June, 1854, leaving one child, whose title the plaintiff subsequently acquired. In June, 1855, Peletiah Bickford married Elizabeth Kinney, who is now the defendant Elizabeth Bickford. In 1880 the said Peletiah died intestate, leaving surviving him his wife, the said Elizabeth, and seven children by her, and also the child by his first wife. Subsequent to his death one of the children by his second wife died unmarried.

In February, 1849, the said Peletiah purchased at an administrator's sale one and one-half leagues of land, part of five and one-fourth leagues granted to Joshua Davis. Said sale was approved in March, 1849, and a deed bearing date the 6th day of March, 1849, and acknowledged by the administrator on the 16th day of March, 1850, was made by the administrator to the said Peletiah. The land described

in said deed included the tract now in controversy. The said deed recited that the consideration for it was $188, in cash.

That part of the grant of which the one and one-half leagues so conveyed constituted a part was void, because it was situated within the ten littoral leagues, and in 1850 one Francis Brichta located certificates, aggregating 2560 acres, upon a part of said land so as to embrace the 250 acres now in controversy, and patents were issued for the lands so located in the year 1863. In 1853 Brichta began suit against the said Peletiah Bickford for the recovery of the said 2560 acres of land. In 1875 judgment was rendered by the District Court of Matagorda County in favor of the said Peletiah for the 250 acres in controversy now. "Such judgment was according to a compromise made by the parties, and was evidenced by a deed from the plaintiffs in the suit to the said Peletiah, which recited that it was made in settlement of the said litigation. The said Peletiah lived on the land now in controversy, with his second wife and his daughter by his first marriage, from the date of his second marriage until his death, which occurred in the year 1880." The widow of the second marriage and her children continued to reside upon the land after the death of the said Peletiah.

Upon this evidence the court held, that the land was the separate estate of the said Peletiah, and rendered judgment accordingly.

The agreement that the grant under which the administrator of the estate of William Grant claimed the land was void shows that no title was conveyed by his deed to Bickford. The agreement shows, that the only title that Bickford ever acquired was conveyed to him by the heirs of Francis Brichta in 1860, and the judgment rendered in pursuance thereof in 1875. The fact that the title was acquired during the existence of the second marriage makes a prima facie case of title in Bickford and his second wife. This presumption can only be rebutted, in a controversy between the present parties, by showing that the consideration that induced the conveyance came either from Bickford or his first wife, or from their community. It seems clear to us that the surrender of part of their land by its owners, the plaintiffs in the suit, was induced by the adverse possession by the defendant. It can not be attributed to their title, when it is conceded that they had none, nor can it be put upon the ground that it was because their claim was a cloud upon the plaintiff's title, when it is admitted that the claim of title was a nullity.

There is no evidence of any possession by Bickford prior to his second marriage. The only evidence tending to show the beginning of the actual possession of the land by Bickford is, that he and his wife and daughter lived on the land "from the date of his second marriage." But if the abandonment of the contest against plaintiff's title should

be treated as the true consideration of the compromise and conveyance, that, too, occurred during the second marriage.

We conclude that the land belonged to the community estate of Bickford and his second wife.    When he died one-eighth of his half descended to his daughter by his first wife.    When one of the children of his second wife died, one-half of the interest inherited by it from its father vested in its mother, and one-thirteenth of the other half thereof vested in the daughter by the first wife, and two-thirteenths of one-half of the interest of said deceased child vested in each of the children by the second marriage.

The judgment will be reversed and the cause remanded, so that partition may be made between the plaintiff and the defendants, in which the interest inherited by the daughter of the first marriage from her father and from her deceased brother of the half-blood shall be set off to the plaintiff, if it can be done without including any part of the homestead of 200 acres.

The costs of this appeal will be adjudged against the appellant.

*Reversed and remanded.*

Delivered February 12, 1892.